UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Number: 4:21-cr-3 |
| vs. | ) |
| | ) |
| RACHEL MANNA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## FACTUAL BASIS FOR PLEA

The United States of America, by and through the undersigned attorney for the Public Integrity Section, Criminal Division, United States Department of Justice, and Rachel Manna (hereinafter the "defendant"), hereby stipulate to the following facts pursuant to United States Sentencing Guideline § 6A1.1 and Rule 32 of the Federal Rules of Criminal Procedure. The defendant agrees that, had this case proceeded to trial, the United States would have proven each of the following facts beyond a reasonable doubt with admissible evidence.

At all times relevant to the Information:

1. From approximately June 2017 to June 2018, defendant's friend, Danielle Taff ("Taff"), was employed as a contractor paralegal at the United States Attorney's Office for the Southern District of Iowa ("SDIA") in Des Moines, Iowa. In her capacity as a paralegal, Taff had access to SDIA's shared electronic data storage drive, on which files related to civil and criminal matters were electronically stored. Taff's official duties and responsibilities did not require or authorize her to access criminal case files on SDIA's shared electronic data storage drive. The defendant was aware that Taff had access to criminal files on SDIA's shared electronic data storage drive, files that contained sensitive, non-public information that the defendant was not authorized to possess.

2. In early 2018, the Bureau of Alcohol, Tobacco, and Firearms and the Iowa Department of Narcotics Enforcement conducted a joint criminal investigation into a methamphetamine trafficking organization involving multiple subjects in Iowa and Arizona (hereinafter, "the drug-trafficking investigation"). The drug-trafficking investigation led to four indictments filed in SDIA charging more than ten (10) individuals. One of those individuals was the father of the defendant's child.

3. Reports, records, and filings related to the drug-trafficking investigation and prosecutions were stored on SDIA's shared electronic data storage drive. The files were saved in a section of the shared electronic data storage drive dedicated to SDIA's Criminal Division, under a sub-folder named after the lead defendant in the investigation, who is the father of the defendant's child.

4. Beginning in the spring of 2018, after the arrest of the individuals in the drug-trafficking investigation, Taff contacted the defendant and told her she had access to information regarding the investigation that she was willing to share with the defendant. Subsequently, the defendant asked Taff for information regarding the drug-trafficking investigation from SDIA's internal files, including information regarding individuals who provided statements to law enforcement authorities during the investigation and information regarding upcoming arrests. The defendant knew that the information was not publicly available and that Taff could obtain it only because of her position at SDIA. She also knew that Taff was not authorized to access the information for personal, or non-work related, reasons and that criminal matters were outside the scope of Taff's work responsibilities. Likewise, she knew that Taff was not allowed to give the information to the defendant, and that the defendant was not authorized to possess such non-public information.

5. On or about May 16, 2018, in response to the defendant's request for case-related information, Taff used her U.S. Department of Justice computer to access the electronic folder within SDIA's shared electronic data storage drive containing non-public records and reports related to the drug-trafficking investigation, including but not limited to a chemical-analysis report, a search warrant report, and reports of law enforcement interviews with at least two individuals who cooperated in the investigation ("Cooperator 1" and "Cooperator 2"). The interview reports identified the names, addresses, phone numbers, dates of birth, and other identifying information of Cooperator 1, Cooperator 2, and other individuals. Using her cellular phone, Taff took approximately thirty (30) photographs of her computer screen, which displayed various pages of the aforementioned reports and other records related to the drug-trafficking investigation. The documents that Taff photographed contained information that was neither publicly available nor authorized for public dissemination. Both the electronic data storage drive and the U.S. Department of Justice computer that the defendant used to access the drive were for exclusive use by the Department of Justice in furtherance of the administration of justice.

6. Taff had no official, work-related reason to view the aforementioned reports and records, nor was she authorized to access them. Taff was aware that she was not authorized to review documents from criminal cases, and she similarly knew that she was not permitted to photograph or otherwise take this non-public information from the files of SDIA. The defendant also was aware that Taff had no legitimate, official purpose for accessing the criminal files.

7. The information obtained by Taff in the photographed law enforcement reports was property belonging to the United States, which the Department of Justice had a right to keep confidential and in its exclusive control. At the time she obtained the information, Taff intended to share it with the defendant, who was not an employee of the Department of Justice or any law

enforcement agency. Both Taff and the defendant understood at the time Taff obtained the information that the defendant was not authorized by the Department of Justice to possess the information in any manner.

8. The value of the information exceeded $5,000 based on the cost of the government facilities and employees required to produce the information. Creating the chemical-analysis report required costs associated with the shipment of the suspected narcotics; the purchase, maintenance, and use of technical equipment in a laboratory; and the time of the laboratory technician to perform the analysis and write the report. Creating the report of the search warrant and the reports of the interviews of Cooperator 1 and Cooperator 2 required costs associated with salaries of multiple government agents, including but not limited to the agents who participated in the search, conducted the interviews, wrote the reports, and transported and maintained custody of the cooperators and the individuals arrested during the search.

9. On or about the afternoon of May 16, 2018, the defendant met with Taff for lunch in Des Moines, Iowa. During the lunch, Taff showed the defendant the photographs of the documents related to the drug trafficking investigation, including the reports of the cooperators' interviews with law enforcement authorities. The defendant used her cellular phone to photograph the images of the documents as they were displayed on the screen of Taff's cellular phone.

10. On or about May 25, 2018, the defendant sent Taff a message via Facebook Messenger stating that the defendant forgot to photograph one of the images of the documents displayed on Taff's phone. Later that day, Taff and the defendant met in person and Taff allowed the defendant to photograph an additional image of a report related to the drug trafficking investigation as it was displayed on Taff's phone.

11. Between approximately May 16, 2018 and May 25, 2018, the defendant sent some

or all of the images to approximately nine (9) separate individuals via Facebook Messenger. In providing the documents to some individuals, the defendant notified those individuals that Cooperator 1 and/or Cooperator 2 had identified those individuals to law enforcement authorities as being involved in drug-trafficking activity. Between May 16, 2018 and October 25, 2018, the images were further disseminated to and from individuals known and unknown over Facebook Messenger and other messaging platforms.

12. On or about October 7, 2018, a Facebook user posted approximately twenty-seven (27) images of the documents related to the drug trafficking investigation on a Facebook group page called "des moines haterz & snitches," which is a Facebook group dedicated to outing law enforcement sources and cooperators in the Des Moines area. Among the photographs posted were images of the report of Cooperator 1's interview with law enforcement authorities, which describes the information provided by Cooperator 1 regarding individuals involved in drug-trafficking activity in the Des Moines area. The images posted to the Facebook group page were the same images that Taff took in her office at SDIA and subsequently provided to the defendant on or about May 16, 2018, and which the defendant subsequently shared with numerous individuals.

13. On or about October 25, 2018, a Facebook user posted one image of the report of Cooperator 2's interview with law enforcement authorities, which describes the information provided by Cooperator 2 regarding individuals involved in drug-trafficking activity in the Des Moines area, to the "des moines haterz & snitches" page. The image posted to the Facebook group page was one of the images that Taff took in her office at SDIA and subsequently provided to the defendant on or about May 16, 2018, and which the defendant subsequently shared with numerous individuals.

14. As a result of the defendant's conduct, Cooperator 1 and Cooperator 2 were publicly identified as cooperators in the drug-trafficking investigation and in SDIA's prosecution of several individuals. Cooperator 1 and Cooperator 2 were both scheduled to be sentenced for their involvement in drug-trafficking crimes in October 2018; however, as a result of their identities as cooperators having been made public, their sentencings were delayed until December 2019 while the Department of Justice investigated the leak.

Date: 2/4/21

COREY R. AMUNDSON
Chief
Public Integrity Section

_____
Erica O'Brien Waymack
Matthew R. Palmer-Ball
Trial Attorneys
Public Integrity Section
Criminal Division
United States Department of Justice

6

After consulting with my attorney, I hereby stipulate that the Factual Basis for Plea above is true and accurate, and that, had the matter gone to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 1/20/2021

_____
Rachel Manna
Defendant

I am the attorney for Rachel Manna I have carefully reviewed the Factual Basis for Plea above with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is an informed and voluntary one.

Date: 1/20/21

_____
Attorney for the Defendant